Anthony M. **SIMPSON**, Sr., Plaintiff,

v.

**CITY OF CHARLESTON**, a municipality, and the **Kroger Company**, a West Virginia corporation, Defendants.

Civil Action No. 2:97–0838.

United States District Court,
S.D. West Virginia,
Charleston Division.

Oct. 1, 1998.

Julia B. Shalhoup, Charleston, WV, for Plaintiff.

Ricklin Brown, John R. Teare, Jr., Elizabeth D. Harter and Maria Hughes, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for City of Charleston.

Travis S. Haley, Pullin, Knopf, Fowler & Flanagan Charleston, WV, for Kroger Co.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the Plaintiff and Defendant Kroger Company's ("Kroger's") cross motions for summary judgment on all issues. Defendant City of Charleston ("the City") requests partial summary judgment on the issues of the City's liability based on common law negligence and the availability of punitive damages against the City. Having carefully considered the extensive briefing by all parties on these motions, the Court (1) **GRANTS** Plaintiff's motion for summary judgment on the City's duty to undertake a transition plan pursuant to the Americans with Disabilities Act ("ADA"), subject to an order to show cause why the Court should not require the City to complete that transition plan; (2) **GRANTS** summary judgment for Plaintiff on the issue of Kroger's duty under the ADA to remove architectural barriers on sidewalks for which it is responsible because of ownership, agency or occupancy; (3) **DENIES** the City's motion for partial summary judgment on the issue of City liability based on common law negligence; and

(4) **GRANTS** the City's motion for partial summary judgment on the issue of punitive damages against the City. The Court **DENIES** summary judgment on all other issues, finding there remain genuine issues of material fact.

## I. FACTUAL BACKGROUND

Plaintiff Anthony M. Simpson, Sr. is a quadriplegic whose only means of transportation is a motorized wheelchair. On August 29, 1995 Simpson was traveling by wheelchair to the Kroger supermarket,[1] where he had shopped for several years. He attempted to use the wheelchair ramp on the corner of Delaware Avenue and Roane Street in Charleston, West Virginia, which allows access to a sidewalk surrounding the parking lot of the Kroger grocery store. The ramp had a one and one-half (1 1/2) inch to two (2) inch vertical rise from the street to the ramp. Plaintiff had used the ramp previously when shopping at Kroger, going over the rise slowly and "crawling" the left wheel onto the ramp first. Pl.'s Dep. at 35. On the date of the accident, one driver had motioned to Plaintiff that it was clear to cross the intersection, but another car came "breathing down his back" and Plaintiff had to rush onto the ramp. *Id.* at 36. The front wheels of the wheelchair struck the rise and the wheelchair tipped forward, throwing Plaintiff from his chair and fracturing his shoulder.

Plaintiff seeks declaratory, injunctive and compensatory monetary relief against the City and Kroger under the ADA, 42 U.S.C. § 12101 *et. seq.*, and state tort law. *Count I* of his complaint claims the City has violated the ADA by failing to have an ADA transition plan as required by 28 C.F.R. § 35.150, and by failing to provide safe wheelchair access curb ramps throughout the city, particularly at the corner of Delaware Avenue and Roane Street. *Count II* alleges Kroger violated the ADA by failing to provide safe wheelchair access ramps on its property, thereby denying Plaintiff full and equal access to a place of public accommodation. *Count III* alleges negligence against Defendants Kroger and the City for failure to

properly provide, install, and maintain the handicap access curb ramp at the corner of Delaware Avenue and Roane Street.

## II. DISCUSSION

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994). *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.

---

1. The Kroger Company is incorrectly designated in the Complaint, and is properly known as Kroger Limited Partnership One. Defs.' Mot. Summ. J. at 1.

1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.* 57 F.3d 1317, 1323 (4th Cir.1995). It is through this analytical prism the Court evaluates the parties' motions.

## B. The City ADA Transition Plan

The parties do not dispute the following facts and definitions:

- Plaintiff is a quadriplegic with only minimal partial use of his right arm through manipulation of his shoulder. Thus, he is a "qualified individual with a disability" as defined by Title II of the ADA, 42 U.S.C. § 12131(2).[2]

- The City is a municipality of the State of West Virginia and thus a "public entity" as defined by the provisions of 42 U.S.C. § 12131(A).[3]

- The Kroger store is a "place of public accommodation." [4]

- The effective date of the ADA's Title II regarding public entities was January 26, 1992. *See* Pub.L. No. 101–336, § 205.

- The Kroger store, including sidewalks and curb ramps, was a new construction that was completed and opened to the public on May 21, 1991. Defs.' Mot. Summ. J., Ex. B, C. Thus, the Kroger store was an existing facility under the ADA.

With regard to existing facilities, "a public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). Where structural changes to facilities are undertaken to achieve program accessibility, "a public entity that employs 50 or more persons [5] shall develop, within six months of January 26, 1992, a transition plan setting forward the steps necessary to complete such changes." *Id.* at (d).

Pertinent portions of the regulations regarding the transition plan follow:

(2) *If a public entity has responsibility or authority over streets, roads, or walkways, its transition plan shall include a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving* entities covered by the Act, including State and local government offices and facilities, transportation, *places of public accommodation,* and employers, followed by walkways serving other areas.

(3) The plan shall, at a minimum—

(i) Identify physical obstacles in the public entity's facilities that limit the accessibility of its programs or activities to individuals with disabilities;

---

**2.** Titles II and III deal respectively with public entities and places of public accommodation.

For purposes of the ADA generally, the term "qualified individual with a disability" is defined as follows:

[A]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). The term "disability" is defined as identically for purposes of Titles II and III:

*Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such impairment; or being regarded as having such an impairment.

28 C.F.R. §§ 35.104, 36.104.

**3.** "The term 'public entity' means any State or local government ...." 42 U.S.C. § 12131(1)(A).

**4.** "'Place of public accommodation' means a facility, operated by a private entity, whose operations affect commerce and fall within at least one of the following categories ... (5) a ... grocery store ...." 28 C.F.R. § 36.104.

**5.** Although neither party has noted this issue on brief, the Court takes judicial notice of the fact that the City of Charleston has more than 50 employees, pursuant to *Fed.R.Evid.* 201(b)(2), (c).

(ii) Describe in detail the methods that will be used to make the facilities accessible;

(iii) Specify the schedule for taking the steps necessary to achieve compliance with this section and, if the time period of the transition plan is longer than one year, identify steps that will be taken during each year of the transition period; and

(iv) Indicate the official responsible for implementation of the plan.

28 C.F.R. § 35.150. (Emphasis added).

■ The City offers no evidence that it has created a transition plan required under the ADA.[6] Rather, the City argues (1) it is only required to make city "programs" accessible to disabled individuals, (2) it has no responsibility over walkways, and (3) since the ramp in question was an existing facility, even if the City were responsible for the ramp, it need only have scheduled repair, not necessarily performed it.

As evidence that it only is required to make city "programs" accessible to disabled individuals, the City notes that the regulations concerning a public entity's required transition plan are found in a section entitled "Program Accessibility." As part of such accessibility, however, public entities must ensure that each "service, program, or activity" is readily accessible. 28 C.F.R. § 35.150(a). The transition plan for achieving this accessibility includes providing curb ramps for access to places of public accommodation. *Id.* at (d)(2). "Program accessibility" is clearly a broad term, which includes the curb ramp at issue here.

■ Next, the City argues it has no responsibility or authority over sidewalks, citing City Ordinance § 28–18: "It shall be the duty of every property owner or the agent of any nonresident owner and occupant thereof,

to keep any sidewalk abutting the property in good order." The ADA regulation at issue here, however, says, "If a public entity has responsibility or authority over *streets, roads, or walkways*, its transition plan shall include a schedule for providing curb ramps . . . ." 28 C.F.R. § 35.150(d)(2) (emphasis added). The clause is disjunctive: authority over streets, roads *or* walkways. The City clearly has authority over streets and roads: "[E]very municipality and the governing body thereof shall have plenary power and authority . . . (1)[t]o lay off, establish, construct, open, alter, curb . . . *streets*, avenues, *roads*, alleys, ways, *sidewalks*, drains and gutters, for the use of the public." W. Va. Code § 8–12–5 (1998) (emphasis added). The same state statute that gives the City its authority over streets and roads also extends authority over sidewalks. Thus, the City has authority over streets, roads *and* sidewalks.

The City argues, however, that it has delegated responsibility for sidewalks to the adjoining property owner. Again, the ADA regulation is disjunctive: "If a public entity has responsibility *or* authority . . . ." The City has authority over streets, roads and sidewalks pursuant to W. Va.Code § 8–12–5. That authority includes the authority to make adjacent owners or occupants responsible for keeping sidewalks in good order, pursuant to W. Va.Code § 8–12–5(5).[7] That is, the City has the authority to enact City Ordinance 28–18 requiring adjoining property owners or their agents to keep sidewalks in good order.

City ordinance 28–18 does not, however, relieve the City of its responsibility. In *Maxey v. City of Bluefield,* 151 W.Va. 302, 151 S.E.2d 689 (1966), the West Virginia Supreme Court of Appeals construed a simi-

---

**6.** When asked in interrogatories to "describe all steps taken from 1990 to the present to analyze or ensure ADA compliance with regard to sidewalks and/or ramps within your custody or control," the City responded: "The City of Charleston generally does not construct, own, maintain or control sidewalks and/or ramps within the city limits. The sidewalk/ramp at issue in this claim was neither owned, maintained nor controlled by the City of Charleston." Def.'s Resp. to Pl.'s First Set of Interrogs. at 4.

**7.** "Every municipality and the governing body thereof shall have plenary power and authority . . . (5) to order the sidewalks . . . to be paved, repaved, curbed or recurbed and kept in good order, free and clean, by the owners or occupants thereof or of the real property next adjacent thereto. . . ." W. Va.Code § 8–12–5(5) (1998).

lar city ordinance.[8] Although the court found the portion of the ordinance requiring adjacent landowners to maintain sidewalks gave rise to a cause of action by the plaintiff against the landowners, "[the landowners'] liability is joint and several with that of the city." *Id.* at 307, 151 S.E.2d at 693. Because the City retains liability, it also retains its duty, that is, its responsibility over sidewalks. Thus, the City has both authority and responsibility over sidewalks.

■ The City's final argument is that, even if it were responsible for the curb ramp, it was required only to schedule repair, not to perform it. The transition plan was required to be developed within six months of January 26, 1992. 28 C.F.R. § 35.150(d). Structural changes undertaken to comply with section 35.150 should have been made within three years of January 26, 1992, "but in any event as expeditiously as possible." *Id.* at (c). Thus, the City had the obligation to prepare and complete the transition plan by July 26, 1992, and to make any required changes by January 26, 1995. The City is correct that it is a question of fact whether this particular ramp needed alteration to comply with the ADA, but as a matter of law, the City had a duty to identify physical obstacles in its facilities, including curb ramps, that limit the accessibility of its programs or activities, including curb ramps serving places of public accommodation like Kroger.

Accordingly, the Court **GRANTS** Plaintiff's motion for summary judgment on the issue of the City's duty to prepare an ADA transition plan, a plan which is now more than six years overdue.

Pursuant to section 35.150(a)(3), however, a public entity cannot be required to take any action it can demonstrate would result in an undue financial and administrative burden. Therefore, this Court issues an OR-DER TO SHOW CAUSE why it should not require the City to complete an ADA transition plan.

### C. Kroger's Duty to Remove Architectural Barriers Extends to Curb Ramps

■ Under the ADA, a place of public accommodation such as a Kroger grocery store "shall remove architectural barriers in existing facilities ... where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty of expense." 28 C.F.R. § 36.304(a).

Defendant Kroger argues it is not the landowner,[9] and thus not responsible for the surrounding sidewalk, pursuant to City Ordinance § 28–18.[10] While not the landowner, Kroger is the "occupant thereof," and thus responsible for maintenance of the sidewalk under the city ordinance. As analyzed above, the City shares that responsibility with the adjoining landowner.

Accordingly, the Court finds and concludes that Kroger's duty under the ADA to remove architectural barriers in existing facilities extends to sidewalks for which it is responsible because of ownership, agency or occupancy, pursuant to City Ordinance § 28–18. The Court **GRANTS** summary judgment for Plaintiff on the issue of Kroger's duty under the ADA to remove architectural barriers on sidewalks for which it is responsible.

### D. City Liability Based on Common Law Negligence

■ The City argues *West Virginia Code* section 29–12A–5(a)(9–10) (1992) provides immunity from state law claims of negligence based upon any failure to inspect or an insufficient inspection to determine whether the property violates any law or contains a hazard to health or safety. The

---

**8.** The ordinance in question required abutting property owners (1) to maintain the sidewalk in a state of good repair and (2) to reimburse the city for any loss, damages or costs imposed by reason of the failure of the property owner to do so. The *Maxey* court found the second portion invalid. 151 W.Va. at 305, 151 S.E.2d at 692.

**9.** In April, 1991 Kroger sold the property to Mercantile Title Agency, which in turn sold the property to Herbert A. Middendorff on April 2, 1991. On April 2, 1991, Kroger entered into a lease with Middendorff for the property. Def. Kroger Mot. Summ. J. at 5.

**10.** "It shall be the duty of every property owner or the agent of any nonresident owner and occupant thereof, to keep any sidewalk abutting the property in good order." Charleston City Ordinance § 28–18.

City correctly cites and quotes section 29–12A–5 of the *Code* while ignoring the relevant section, 29–12A–4(c)(3), which states in pertinent part: "Political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks ... open, in repair, or free from nuisance ...." A sidewalk is out of repair if it is unsafe for ordinary modes of travel. *Jones v. City of Mannington,* 148 W.Va. 583, 136 S.E.2d 882 (1964). Travel by wheelchair is an ordinary mode of travel for a curb ramp. Whether the curb ramp at issue was in repair is clearly a crucial issue for the trier of fact in this case.

Accordingly, the Court **DENIES** the City's motion for partial summary judgment on the issue of City liability based on common law negligence.

#### E. *Punitive Damages Against the City Prohibited*

 *West Virginia Code* section 29–12A–7(a) prohibits an award of punitive damages against the City on the Plaintiff's state law claims. The statute reads in pertinent part:

> Notwithstanding any other provisions of this code or rules of a court to the contrary, in an action against a political subdivision or its employee to recover damages for injury, death, or loss to persons or property for injury, death, or loss to persons or property caused by an act or omission of such political subdivision or employee:
>
> (a) In any civil action involving a political subdivision or any of its employees as a party defendant, an award of punitive or exemplary damages against such political subdivision is prohibited.

W. Va.Code § 29–12A–7(a) (1992).

Based on this statute, the Court **GRANTS** the City's motion for partial summary judgment on the issue of punitive damages against the City.

### III. CONCLUSION

Accordingly, the Court (1) **GRANTS** Plaintiff's motion for summary judgment on the City's duty to undertake a transition plan pursuant to the ADA, subject to an order to show cause why the Court should not require the City to complete that transition plan; (2) **GRANTS** summary judgment for Plaintiff on the issue of Kroger's duty under the ADA to remove architectural barriers on sidewalks for which it is responsible because of ownership, agency or occupancy; (3) **DENIES** the City's motion for partial summary judgment on the issue of City liability based on common law negligence; and (4) **GRANTS** the City's motion for partial summary judgment on the issue of punitive damages against the City. The Court **DENIES** summary judgment on all other issues, finding there remain genuine issues of material fact.